UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICHOLAS STOLINAS,

     Plaintiff,

             v.                   Case No.: 2:18-cv-702-FtM-38MRM

WALTER PALMER,

     Defendant.

_____/

## OPINION AND ORDER[1]

Before the Court are Defendant Walter Palmer's motion for summary judgment (Doc. 64), Plaintiff Nicholas Stolinas' response in opposition (Doc. 73), and Palmer's reply (Doc. 78). The Court grants the Motion.

## BACKGROUND

This negligent entrustment case arises from an accident on Palmer's boat near Marco Island, Florida. (Doc. 1 at 2). Stolinas claims Palmer negligently entrusted his boat to Andrew Derwin, who was driving the boat when the accident occurred.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

On a summer Sunday afternoon, Stolinas, Derwin, and their friend Virginia Hackman went for a pleasure ride on Palmer's boat. (Doc. 64-2 at 7, 9, 23:4-17: 31: 23-25; 32: 1-8). While in the water, Derwin made a sudden and unexpected turn that caused Stolinas to fall off the boat. (Doc. 64-2 at 10, 33:18-20; 34: 19-22). Grievous injuries ensued: Stolinas's right hand was cut nearly all the way off and his right leg was severely damaged. (Doc. 64-2, 34:23-25, 35:1-25). Following the accident, the State arrested Derwin and charged him with grand theft of Palmer's boat. He committed suicide before standing trial. (Doc. 64-2 at 8, 27:17-19, 23-25: 28: 9-23).

At issue is Palmer and Derwin's relationship. There is no dispute Palmer and Derwin knew each other. In fact, they were neighbors: Palmer owns a vacation home in Marco Island and Derwin lived with his parents next door. (Doc. 64-3 at 2).

The parties dispute whether Palmer granted Derwin permission to use the boat. In support of Palmer's contention Derwin did not have permission to use the boat, he submits an affidavit stating he never entrusted Derwin with the boat. (Doc. 64-3 at 6). Palmer let no one besides himself operate the boat. (Doc. 64-3 at 3). Palmer never invited Derwin to take a trip aboard his boat, nor did he ever allow Derwin to operate it. (Doc. 64-3 at 4). And someone witnessed Palmer tell Derwin he could not use the boat. On the evening of June 23, 2016, Derwin asked Palmer if he could use Palmer's boat. (Doc. 64-3

at 4).   In front of Palmer's friend Ross Larson, Palmer responded "No, absolutely not! You cannot use the boat." (Doc. 64-3 at 4).[2]   During the investigation of the accident, Palmer told police Derwin did not have permission to use the boat and conveyed he wanted criminal charges brought against Derwin.   (Doc. 64-3 at 4-5).

To demonstrate entrustment, Stolinas submits statements from himself, Virgina Hackman, Beatrice Alonzo, and Ann Derwin (Andrew's mother). Stolinas testified Derwin told everyone who went on the boat that Derwin had permission to use it.   (Doc. 64-2 at 8, 26: 18-24).   In a statement provided to the police, Hackman states "she was under the impression [they] had full permission to use the boat."   (Doc. 73-1 at 2).   In a statement provided to a private investigator, Beatrice Alonzo, who had previously gone out with Derwin on Palmer's boat, said Derwin told her he had permission to use it. (Doc. 73-13 at 2).   In an unsworn statement, Ann Derwin ("Ms. Derwin") stated "it was [her] understanding that Palmer gave [her] son permission to use the boat."   (Doc. 73-2).

---

[2] Though Reed Larson, Ross Larson's brother who was with Palmer and his brother that night, did not hear the conversation, it was because he was not near the dock at the time. (Doc. 73-3).   Contrary to Stolinas' insinuations, Reed Larson's statement in no way contradicts Palmer's story.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If "the movant adequately supports its motion," the nonmoving party must show "specific facts exist that raise a genuine issue for trial." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) (citation omitted).

At this stage, courts view evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citations omitted).

## DISCUSSION

### A. Admissibility of Evidence

Palmer argues Stolinas', Hackman's, Alonso's, and Ms. Derwin's statements are inadmissible hearsay. He asserts that the statements are

4

barred by Federal Rule of Evidence 803 and Federal Rule of Evidence 804, and that they do not comply with Federal Rule of Evidence 807 as a residual exception to the hearsay rule.

Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Ekokotu v. Federal Exp. Corp.*, 408 F. Appx. 331, 335 (11th Cir. 2011) (citations omitted). Inadmissible hearsay cannot be presented on a motion for summary judgment, except that "otherwise admissible evidence may be 'submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form.'" *McCaskill v. Ray,* 279 F. App'x 913, 914 (11th Cir. 2008) (quoting *McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir. 1996)). Here, the unsworn and unsigned statements submitted by Ms. Derwin and Beatrice Alonzo could be submitted in an admissible form—Stolinas could call these witnesses. Thus, Palmer's objections about the form are non-starters.

But the statements about whether Derwin had permission to use the boat come from Derwin himself. To quell concerns about his use of another person's boat, Derwin told his friends and family he had permission to use the boat. (*See* Doc. 64-2 at 8, 26:23-24) ("Andy told everybody that went on the boat that Palmer gave him permission to use the boat"). The individuals who Stolinas presents to contradict Palmer's testimony all believed Derwin had

permission because of what Derwin himself told them.  The statements are being offered to prove the truth of the matter asserted—that Derwin had permission to use the boat.  Yet Derwin is unavailable to testify, so any statement made out of court to the witnesses is hearsay.  Without Palmer having a chance to cross-examine Derwin, it is inappropriate to admit his statements.

The Court applies the Federal Rules of Evidence.  Derwin is an unavailable declarant under Federal Rule of Evidence 804(a)(4).  None of the available 804(b) exceptions permits including Derwin's statements he had permission to use the boat.  He did not give testimony as a witness at a trial, hearing, or lawful deposition.  *See* Fed. R. Evid. 804(b)(1).  He did not give the statements while thinking his death was imminent.  *See* Fed. R. Evid. 804(b)(2).  The statements are not so contrary to his proprietary or pecuniary interests to qualify as statements against interest.  To the contrary, the self-serving statement(s) absolve Derwin of theft.  *See* Fed. R. Evid. 804(b)(3).

Nor does the residual exception in Federal Rule of Evidence 807 justify admitting these statements.  The statements are not supported by sufficient guarantees of trustworthiness.  *See* Fed. R. Evid. 807(a)(1).  They are statements made by Derwin to explain to his friends and family why he uses Palmer's boat.  No witnesses can corroborate that Palmer gave Derwin permission to use the boat.  Thus, Stolinas has failed to establish that the

statements are reliable and trustworthy enough to permit them to come in under the residual exception.  Admitting them under these circumstances would not best serve the purposes of the Federal Rules of Evidence or the interests of justice.  *See* Fed. R. Evid. 807(a)(4).  The statements are inadmissible hearsay.

## B. Negligent entrustment claim

The Court turns to the negligent entrustment claim.  Florida recognizes Section 390 of the Restatement (Second) of Torts as setting forth the law of negligent entrustment.  Section 390 states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Kitchen v. K-Mart Corp.*, 697 So.2d 1200, 1202 (Fla. 1997) (cleaned up).  "[T]he essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating the vessel safely." *In re Bowman*, Case No: 2:18-cv-71-FtM-29MRM, 2018 WL 3578578, at *2 (M.D. Fla. Jul. 25, 2018) (citing *Joyce v. Joyce*, 975 F.2d 379, 385 (7th Cir. 1992)).

What does it mean to entrust?  Black's Law Dictionary defines entrust as "to give (a person) the responsibility for something, usu[ally] after

7

establishing a confidential relationship." *See* Black's Law Dictionary (11ᵗʰ ed. 2019), entrust.   A Florida court has opined 'entrust' means "[t]o give over to another something after a relation of confidence has been established. To deliver to another something in trust or to commit something to another with a certain confidence regarding his care, use or disposal of it." *Mathis v. Am. Fire & Cas. Co.*, 505 So.2d 652, 653 (Fla. Dist. Ct. App. 1987).

To defeat Palmer's motion, Stolinas must adduce some record evidence that raises a genuine issue as to whether Palmer gave Derwin permission to use the boat.  To prove Palmer negligently entrusted Derwin with his boat, Stolinas must show Palmer deliberately delivered the boat to Derwin's care and custody.   Having determined Derwin's statements are inadmissible hearsay, the Court finds Stolinas fails to put forth any evidence showing this. The only record evidence relevant to the entrustment element is Palmer's affidavit saying he never gave permission.  Seeking to get this case before a jury, Stolinas puts forth several theories that require too many leaps of logic.

The most prominent of those theories is that because Derwin, Stolinas, and Hackman parked in front of Palmer's house when using the boat, Derwin must have entrusted the boat to Derwin.  Stolinas insists "if someone wanted to remain unnoticed because they did not have permission to use Palmer's boat, [he] would have parked at the Derwin house." (Doc. 73 at 5).  He intends to call Virgina Hackman, who will testify "her impression that Derwin had

8

permission arose from the fact that they had parked in front of Palmer's driveway rather than parking in front of Derwin's home next door." (Doc. 73 at 15). This comes from her sworn written statement to the Marco Island Police Department, in which Hackman stated she was "under the impression that [Stolinas, Derwin, and her] had full permission to use the boat." (Doc. 73-1 at 2). As best as the Court can tell, Stolinas argues parking in front of Palmer's house, and lacking fear of being seen, meant Derwin had permission to use the boat.

The Court agrees with Palmer that parking on his driveway does not prove entrustment. It is a logical leap to believe that because Stolinas and Hackman parked on Palmer's driveway, Derwin had permission to use the boat. As Palmer points out in his reply, this tenuous connection does not raise a genuine issue of material fact. To ask the trier of fact to assume that Derwin asked his friends to park in Palmer's driveway because he had permission to use the boat and was not worried about getting caught is pure speculation. It is common for neighbors to allow one another (or their guests) to park on their driveways. That's particularly true in Florida, when snowbirds, like Palmer, return North for the summer. This practice does not support an inference that a neighbor has permission to use a boat and does not create a genuine question of material fact.

The next theory, as the best as the Court can tell, is that Derwin took over maintenance and use of the boat after Palmer left Florida in late June, an inference drawn from the Rose Marina records. According to Stolinas, Palmer would not have called Rose Marina to perform repairs unless someone—Derwin—told him the boat needed repairs. Then, because Palmer did not return Rose Marina's calls, Stolinas insists this means Derwin made the repairs, implying Derwin fixed the boat. This argument does not raise a genuine issue as to any material fact. It is purely speculative and requires too many logical leaps.

Next, Stolinas presents statements from Ms. Derwin he claims show entrustment. She says her son was responsible for upkeep and repair on Palmer's boat and that the Palmers never "refuted the fact that [her] son had permission during our interactions and conversations." (Doc. 73-2 at 1-2). These statements fail to raise a genuine issue whether Palmer entrusted the boat to Derwin for two reasons.

First, it does not matter if Derwin had some responsibilities on the boat. Palmer even admits Derwin covered the boat with tarp a few times. (Doc. 64-3 at 5). Having responsibilities to help with the boat does not necessarily mean entrustment.

Second, even if true, the fact the Palmers never refuted Derwin had permission to use the boat does not show permission. There is no evidence that

10

the Palmers knew Derwin was operating the boat.  And if they did not know

Derwin was using the boat, there would be no reason to tell anyone Derwin

could not use it.   Under Ms. Derwin's theory, she herself would have had

permission to use Palmer's boat, along with everyone else in the neighborhood,

because Palmer never knocked on their doors to tell them they could not use

his boat.

Stolinas made another speculative argument at the Court's November

10, 2020, hearing.  Stolinas asked the Court to consider Derwin's initial 'not

guilty' plea in state court after he was charged with theft.  He believes this 'not

guilty' plea constitutes admissible testimony from Derwin he had permission

to use the boat.  The Court disagrees.  This 'not guilty' plea occurred at the

arraignment, a procedural point when nearly all defendants plead not guilty.

And this 'not guilty' plea did not even address whether he had permission to

use the boat. It merely means he initially pled 'not guilty' to the charged crime.

This is another inference that does not get Stolinas' claims to a jury.

After discovery, Stolinas' case relies heavily on speculation and

inferences.  Speculation does not create a genuine issue of fact.  *See Vega v.*

*Invsco Group, Ltd.*, 432 F. App'x. 867, 869-70 (11th Cir. 2011) ("[T]he

nonmoving party cannot create a genuine issue of material fact through

speculation, conjecture, or evidence that is 'merely colorable' or 'not

significantly probative'").  After discovery has occurred, parties must present

some credible evidence to support their claims, or the case need not proceed. Stolinas presents none.

The decisive question on this motion is whether a jury could reasonably infer, from the admissible evidence, that Palmer entrusted Derwin with the boat. Palmer states he never gave Derwin permission to use his boat. This is the only admissible and probative evidence on the entrustment element, and it establishes that Derwin did not have permission to use the boat. Based on the evidence, a reasonable trier of fact would conclude Palmer never entrusted the boat to Derwin. If Derwin was still alive, and willing to testify under oath Palmer gave him permission to use the boat, this would be a classic "he said, he said" case in which the jury would determine which witness they considered more credible. Without Derwin, Palmer's version, uncontradicted by Stolinas, carries the day. Because the Court finds there was no entrustment, it is unnecessary to consider whether Palmer knew about Derwin's criminal history.

In sum, there is simply no evidence Palmer violated any duty owed to Stolinas. After the close of discovery, the facts establish Walter Palmer did not entrust Andrew Derwin with his boat. To defeat Palmer's motion for summary judgment, Stolinas must present the Court with some credible evidence making it possible for a reasonable juror to conclude Palmer permitted Derwin to use his boat. But he has adduced no evidence that supports this theory.

After discovery, his case consists of speculation and inferences.  They present no facts that call into question Palmer's averment he never gave Derwin permission.  Palmer is entitled to summary judgment.

Accordingly, it is now

**ORDERED**:

1. Defendant Walter Palmer's Motion for Summary Judgment (Doc. 64) is **GRANTED**.

2. The amended complaint (Doc. 38) is **DISMISSED** with prejudice.

3. The Clerk shall enter judgment accordingly, terminate all remaining deadlines and motions, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on January 11, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record